UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JOSEPH H. CRAMER, | ) | |
| | ) | CIVIL ACTION NO. 5:11-49-KKC |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM, OPINION** |
| | ) | **AND ORDER** |
| APPALACHIAN REGIONAL | ) | |
| HEALTHCARE, INC., et. al., | ) | |
| | ) | |
| Defendants | ) | |

This matter is before the Court on Plaintiff Joseph H. Cramer's Motion for Judgment Reversing Administrative Decision. (DE 27). On August 21, 2013, the Court heard oral arguments on this motion from Cramer and from Defendant Appalachian Regional Healthcare ("ARH"). For the reasons that follow, the Court will deny the motion.

## BACKGROUND

This dispute arises from a denial of benefits under a supplemental pension plan. Cramer, who was employed by ARH from 1981 until 2007, seeks to reverse ARH's administrative decision concerning the amount of benefits to which he is entitled. In 1995, Cramer was promoted and became eligible for ARH's Supplemental Executive Retirement Plan ("SERP"), which was created in 1986. The Court previously determined this plan qualifies as a "top hat plan." (DE 26). As a top hat plan, the SERP is exempt from certain provisions of ERISA, including "the vesting or nonforfeitability requirements." *Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 678 (2007). The 1986 SERP defined years of service to include all years in which the participant was employed at ARH. According to a 2006 benefit statement, Cramer would be

1

entitled to receive a monthly benefit of $1,009.34 at age 65 under the 1986 SERP. In reliance on this statement and others, Cramer resigned from ARH on July 1, 2007. He was 48 years old.

In early 2008, Cramer attempted to receive an updated estimate of his benefits. An ARH representative told Cramer that because his other benefits exceeded the SERP-defined minimum, 42% of final pay, he was not entitled to SERP benefits. To find out more, Cramer contacted ARH's chief executive officer and other officials, and ARH interpreted these actions as an appeal of the initial decision regarding his SERP benefits. On July 21, 2009, the Committee of the ARH SERP (the "Committee") issued a letter formally denying Cramer's appeal, but this was later considered the initial denial of Cramer's claim. As a result, after seeking more documentation from ARH, Cramer began his formal administrative appeal.

Meanwhile, on November 7, 2008, the ARH Board of Trustees resolved to terminate the SERP. On December 31, 2008, ARH adopted an Amendment and Restatement of the SERP ("2008 SERP"). The 2008 SERP changed the years-of-service definition to include only the years an employee was eligible for SERP, not the years an employee was employed by ARH but ineligible for SERP. Applying the 2008 SERP to Cramer, the Committee determined that Cramer would be entitled to a credit of twelve years of service. Thus, the Committee concluded that Cramer was not entitled to a supplemental benefit and denied his appeal on November 20, 2010. Cramer, however, contends that his claim should have been governed by the 1986 SERP, which he argues would have entitled him to the supplemental benefits equal to 55% of his final pay.

On January 28, 2011, Cramer filed the instant action bringing four causes of action: (1) a claim for Employee Retirement Income Security Act (ERISA) benefits pursuant to ERISA § 502(a)(1)(B); (2) violations of ERISA's vesting and anti-kickback requirements pursuant to

ERISA § 502(a)(3); (3) breach of fiduciary duty pursuant to ERISA § 502(a)(2); and (4) equitable estoppel. Because the Court previously determined that the SERP is a top hat plan, Cramer has only two claims remaining: his claim for benefits and his equitable estoppel claim.

## ANALYSIS

### I. Cramer's Claim for Benefits Under ERISA Section 502(a)(1)(B)

#### A. Standard of Review

The Court will apply an arbitrary and capricious standard of review to the Committee's decision regarding Cramer's plan benefits. A benefits claim "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Court of Appeals for the Sixth Circuit found that a plan containing "a broad grant of discretionary authority to determine eligibility for benefits and to construe the terms of the plan" justified review under the arbitrary and capricious standard. *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066-68 (6th Cir. 1998). Under this "highly deferential" standard, administrative decisions are upheld if "rational in light of the plan's provisions." *Id.* (quoting *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983-84 (6th Cir. 1991)). In other words, the Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Solomon v. Med. Mut. of Ohio*, 411 Fed. App'x 788, 792 (6th Cir. 2011) (quoting *Morgan SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004)). This is the "least demanding form of judicial review of administrative action." *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010) (quoting *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003)).

In this case, both the 2008 and 1986 SERP included the necessary grant of discretionary authority. Cramer concedes that the 2008 SERP contains this language, but argues that the 1986 SERP does not. Section 7.02, the relevant portion of the 1986 SERP, states that "[t]he Committee shall have the authority to interpret the Plan, to adopt and review rules relating to the Plan and to make any other determinations for the administration of the Plan." The Sixth Circuit previously found that similar language granted the necessary discretionary authority to merit a deferential standard of review. *See Borda*, 138 F.3d at 1066. In *Borda*, the relevant terms of the plan provided that "[t]he Administrator shall have the power to make determinations with respect to all questions arising in connection with the administration, interpretation, and application of the Plan." *See id.* Like *Borda*, the language in the 1986 SERP grants complete authority to both interpret and administer the plan, and therefore should be similarly construed as a broad grant of discretionary authority.

The Sixth Circuit has held that courts must sometimes abandon a deferential standard of review when plan administrators do not comply with proper procedures. *See Stoll v. W. & S. Life Ins. Co.*, 64 Fed. App'x 986, 991 (6th Cir. 2003); *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 597 (6th Cir. 2001) (applying a *de novo* standard "when an unauthorized body makes the decision denying the benefits claim"). In this vein, Cramer points to several procedural irregularities to argue that the Court should adopt a *de novo* standard of review. First, Cramer argues that the Committee violated procedures when it refused to provide interpretations of the earlier versions of the SERP, including the annual actuarial reports and valuations. This information, however, was not relevant to the Committee's decision that the 2008 SERP applied to Cramer's claim and thus did not have to be provided. *See* 29 C.F.R. § 2560.503-1(h)(2)(iii). Second, Cramer argues that the Committee violated the SERP procedures because "no meeting

4

was held to review [his] claim or appeal, and no formal record of the Committee's review and decision were apparently maintained." The SERP provides that the Committee can act with unanimous consent in writing without a meeting, (AR 429-30), and while the Committee decided Cramer's claim and appeal by unanimous consent, it failed to provide a writing. Still, the Committee substantially complied with the procedural requirements. Third, Cramer argues that ARH's refusal to provide information regarding its review and determination of his claim, including communications between Committee members, amounts to a procedural violation.

In determining whether the alleged procedural violations require the Court to abandon the arbitrary and capricious standard of review, this Court must determine whether the Committee was in "substantial compliance" with ERISA's procedures. *See Stoll*, 64 Fed. Appx. at 991 (citing *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807-08)). The United States Court of Appeals has stated that it "will not disturb a benefits decision based on a procedural defect when the underlying purposes of 29 U.S.C. § 1133, to ensure notice and an opportunity for review, are fulfilled." *See id.* Here, Cramer contends that the alleged procedural defects are "egregious" and "gross departures from ERISA's required claims procedures" (DE 29 p. 1). He does not argue, however, that the alleged defects deprived him of adequate notice or an opportunity for review. In fact, the administrative record makes clear that Cramer was afforded adequate notice of the Committee's decision and his subsequent right to pursue a civil action, along with opportunity for review of his claim. Even if this Court found that Cramer was entitled to further information not provided by the Committee, there is simply no indication that such minor procedural errors affected the Committee's decision or deprived Cramer of review when the record below otherwise demonstrates the Committee reached its decision through careful review and reasoned judgment.

Under ERISA, the Committee is required only to provide relevant information. 29 C.F.R. § 2560.503-1(h)(2)(iii). To the extent that the Committee's final determination was that Cramer's claim is governed by the 2008 SERP, it was not required to provide Cramer with information regarding how prior iterations of the plan were interpreted and administered. Thus, failing to provide that information does not merit a departure from the deferential standard of review.

Cramer argues that even if this Court adopts an arbitrary and capricious standard of review, the Court should give weight to the plan's structural conflict of interest when determining whether there was an abuse of discretion. While a conflict of interest does not change the standard of review, it requires that "the reviewing judge take account of the conflict when determining whether the trustee [the administrator] . . . has abused his discretion." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). In order to prevail, a plaintiff must demonstrate with "significant evidence" that the conflict of interest affected the administrator's decision. *See Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998). Mere allegations that a conflict exists are insufficient, and Cramer has not explained how any irregularities evidenced an abuse of discretion. *See id*.

As proof that the structural conflict of interest caused the Committee to abuse its discretion in evaluating his claim, Cramer points to various alleged procedural irregularities combined with the fact that the Board of Trustees explicitly sought to terminate and retroactively amend the 1986 SERP in order to reduce its financial liabilities. That the Board of Trustees sought to reduce its financial liability is not itself evidence that the Committee reviewing Cramer's claim acted out of bias. Nor is it significant evidence of bias that a Committee member expressed concern that contradicting prior interpretations of SERP would pose problems for

6

claims. Similarly, none of Cramer's alleged procedural irregularities—such as the extended period it took to review the claim, the fact that the Committee first treated an informal inquiry as a formal claim for benefits, or its refusal to provide actuarial reports and valuations—evidence an abuse of discretion caused by a conflict of interest.

Further, the Supreme Court has previously held that any structural conflict of interest should be given diminishing weight by the court when the administrator takes "steps to reduce potential bias and to promote accuracy." *See Glenn*, 554 U.S. at 117. Here, ARH took such steps by retaining outside counsel, who lacked a financial stake in the outcome, to assist it in reviewing Cramer's claim. Although ARH did not completely "wall[] off claims administrators from those interested in firm finances," retaining outside counsel certainly reduced the structural conflict of interest that would otherwise exist. *Id.* Given these steps taken by ARH along with Cramer's failure to present any significant evidence of bias in the Committee's evaluation, this Court rejects the plaintiff's argument that ARH's conflict of interest led it to abuse its discretion.

## B. The Committee Reasonably Determined that the 2008 SERP Governs Cramer's Benefits

Applying the arbitrary and capricious standard, this Court finds that the Committee reasonably determined that the 2008 SERP governs Cramer's benefits. Cramer correctly notes that Section 1.2 of the 2008 SERP provides that it applies only to those employed on or after the Effective Date, which is subsequently established as November 7, 2008. This provision would therefore exclude Cramer, who retired in 2007. The Committee's review of Cramer's claim, however, determined that the November 7, 2008 date was the result of a drafting error, and that the *intended* Effective Date was January 1, 2005. For support for this ruling, the Committee looked at the very next sentence of Section 1.2, which states that "[t]he rights and benefits, if

7

any, of persons who Separated from Service prior to January 1, 2005 shall be determined in accordance with the provisions of the Plan in effect on the date their employment terminated." As the Committee noted, if the Effective Date of November 7, 2008 was *not* a drafting error, the provision taken as a whole would simply leave out those employees who left the company between January 1, 2005 and November 7, 2008. Given how unlikely it is that such a lapse was the intent of the drafters, the Committee determined that the Effective Date should have corresponded with the subsequent sentence.

Other provisions of the 2008 SERP provided support for the Committee's decision that it applied to Cramer. The introductory paragraphs of the revised plan, for example, note that the benefits for non-retired members were subject to retroactive "cutback or forfeiture at the Employer's discretion or due to the inability to pay." These reasons were all detailed in the Committee's denial of Cramer's appeal.

It is not necessary for ARH to persuade this Court that its decision to apply the 2008 SERP to Cramer was the most persuasive, only that it is "rational in light of the plan's provisions." *Borda*, 138 F.3d at 1066 (quoting *Miller*, 925 F.2d at 984). ARH has met this burden.

**C. The Committee Reasonably Determined that Cramer's Benefits Were Non-Vested and Subject to Forfeiture**

Cramer further contends that the 2008 SERP cannot apply to him because his benefits were fully vested and non-forfeitable. To support this claim he offers three reasons: First, his benefits were fully vested under Section 6.01 of the 1986 SERP. Second, ARH could not retroactively decrease his benefits under Section 9.06 of the 1986 SERP because he was a "Retired Member." And third, his benefits became non-forfeitable under Section 9.07 of the

8

1986 SERP when the Board of Trustees amended the SERP because the action constituted a partial termination of the plan. This Court finds that the Committee reasonably determined that Cramer's benefits were non-vested and subject to forfeiture.

Section 6.01 provides that benefits become fully vested after seven years of employment and that "the benefits shall be determined under provisions of the Plan as in effect on the date of the Member's termination of employment." Cramer argues that his benefits fully vested under this provision and ARH therefore did not have the authority to reduce or eliminate them when it amended the SERP. In reviewing this claim, the Committee found that although Cramer's interpretation of Section 6.01 was reasonable, Section 9.06 controlled and permitted ARH to retroactively change how the benefits would be determined for all members who were not disabled or retired. Because this Court finds that the Committee's interpretation of the plan was reasonable, it will not disturb its interpretation of the plan even though the plaintiff offers an equally reasonable alternative explanation. *See Solomon*, 411 Fed. App'x at 792.

Cramer further contends that he should be classified as a "Retired Member" and thus not subject to retroactive modification of his benefits under the 1986 SERP. Section 9.06 grants ARH the power to retroactively amend any provision of the plan *except* to the extent that such an amendment would reduce the benefits of any "Disabled or Retired Member or surviving spouse." Cramer argues that because he retired in 2007, his benefits are non-forfeitable even if the plan is retroactively amended. The 1986 SERP defines "Retired Member" as "any Member of the Plan who has qualified for retirement and has retired, and who is eligible to receive Monthly Retirement Income under the Plan." The Committee found that Cramer did not meet the requirements to be classified as a Retired Member, because he left the company at age 48, before both the Normal Retirement Age (65) and the Early Retirement Age (55). This Court finds that

9

the Committee did not abuse its discretion in reasonably determining that Cramer was not a "Retired Member" under the plan.

Finally, this Court finds that ARH's determination that the SERP was amended prior to its partial termination is reasonable and not an abuse of discretion. Cramer argues that ARH partially terminated the SERP on November 7, 2008, and under Section 9.07 of the 1986 SERP his benefits became non-forfeitable on partial termination. In its findings of fact, the Committee determined that the partial termination did not occur until early 2009 when it began paying out accelerated benefits to some of its members. The Committee found that in 2006 the Board of Trustees resolved not to add any new members to the SERP; in November of 2008 it adopted various changes to the SERP that included accelerating benefit payments to most of its members; and finally, in 2009 the plan was partially terminated when it began paying out most of the remaining SERP benefits. Cramer contends that allowing the Board to retroactively change benefits and subsequently determine the date of termination makes the non-forfeitability clause in 9.07 illusory, but ARH correctly notes that requiring benefits to vest whenever the Board decides to reduce or eliminate them would render the retroactive amendment authority in Section 9.06 meaningless. The Court finds that the Committee's interpretation regarding the date on which the plan was partially terminated is reasonable and is therefore not an abuse of discretion.

## II. Cramer's Claim for Equitable Relief

Cramer cannot maintain an equitable estoppel claim because the terms of the SERP are unambiguous and he has failed to demonstrate the kind of extraordinary circumstances required to prevail. The Sixth Circuit recognizes equitable estoppel as a "viable theory in ERISA cases." *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998); *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440 (6th Cir. 2010). When, however, the terms of a plan

10

are unambiguous, the misrepresentation must be made in writing and the plaintiff must demonstrate "extraordinary circumstances in which the balance of equities strongly favors the application of estoppel." *See Bloemker*, 605 F.3d at 444. Without such a showing of extraordinary circumstances, the plaintiff cannot prevail on an equitable estoppel claim.

This Court finds that the relevant language of the SERP is unambiguous and Cramer must demonstrate extraordinary circumstances to pursue his claim of equitable estoppel. In this case, Cramer contends that ARH made material misrepresentations about the number of years used to calculate his SERP benefit. The language of the 2008 SERP, which retroactively changed the 1986 SERP, is unambiguous with respect to this question. Cramer, however, argues that the relevant ambiguity is not about which years are used to calculate the benefit, but rather, the vesting and non-forfeitability of his benefits as described in the 1986 SERP. This argument is unavailing. Cramer's allegations with regard to ARH's material misrepresentations necessary to support an estoppel claim is not that they represented to him that his benefits were non-forfeitable. Rather, Cramer argues that they misrepresented the number of years used to calculate his benefits. In his motion, Cramer asserts his understanding that his benefits were vested and non-forfeitable, but he never alleges that ARH made any misrepresentation to him about forfeitability or its ability to retroactively amend the SERP. Thus, the Court will focus on the unambiguous language of the 2008 SERP in describing the number of years used in the calculation.

Because the Court finds the plan language unambiguous, Cramer must demonstrate "extraordinary circumstances in which the balance of equities strongly favors the application of estoppel." *See Bloemker*, 605 F.3d at 444. In *Bloemker*, the plaintiff relied on a document certifying that he was entitled to a particular benefit amount. After electing the benefit and

11

receiving it for a period of time, it became apparent that the benefit was miscalculated and the plan administrators sought to not only reduce his benefit going forward, but informed him he would be required to pay back any excess benefits received. The Sixth Circuit found that because it was impossible for the plaintiff to calculate his own benefits due to "the complexity of actuarial calculations and his lack of knowledge about the relevant actuarial assumptions," this presented extraordinary circumstances meriting an equitable estoppel claim. *Id.* at 443. The key factor in *Bloemker* was that the benefits the plaintiff received were miscalculated by the administrator, and the "plan provisions . . . did not allow for individual calculation of benefits." *Id.* at 444. It was therefore impossible for the plaintiff to have known simply by looking at the unambiguous plan language that his benefits were being miscalculated.

Unlike *Bloemker*, the issue in the present case is not that the certified actuarial calculations were incorrect and it was impossible for Cramer to calculate them himself. Cramer simply disputes ARH's authority to retroactively change the terms of the plan. Thus, we are not presented with a situation where Cramer relied on a calculation that was outside of his expertise to verify—he relied on a current estimate of benefits that could be retroactively changed. Without extraordinary circumstances like those in *Bloemker*, Cramer cannot pursue a claim of equitable estoppel in the face of unambiguous plan language.

Because this Court finds that Cramer has failed to demonstrate extraordinary circumstances in the face of unambiguous plan language, it is unnecessary to analyze whether the traditional elements of equitable estoppel have been met.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Judgment Reversing Administrative Decision (DE 27) is **DENIED** with regard to both his claim for benefits under ERISA § 502(a)(1)(B) and his claim for equitable estoppel.

The Court further **ORDERS** that this action is **DISMISSED** and **STRICKEN** from the Court's active docket.

Dated this 27th day of September, 2013.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge